**CALLAHAN & BLAINE, PC**
Michael J. Sachs (SBN 134468)
MJS@callahan-law.com
Jason Casero (SBN 263933)
jcasero@callahan-law.com
19900 MacArthur Blvd., Suite 1200
Irvine, California 92612
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Plaintiff EVOX PRODUCTIONS LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

EVOX PRODUCTIONS LLC, a Delaware limited liability company,

Plaintiff,

v.

GOOGLE LLC, a Delaware limited liability company and DOES 1-10,

Defendant.

CASE NO. 5:26-cv-07013-EKL

**FIRST AMENDED COMPLAINT FOR:**

**(1) DIRECT COPYRIGHT INFRINGEMENT – REPRODUCTION, DISTRIBUTION, & DISPLAY;**

**(2) DIRECT COPYRIGHT INFRINGEMENT - REPRODUCTION;**

**(3) DIRECT COPYRIGHT INFRINGEMENT – USE EXCEEDING CONDITIONS & SCOPE OF LICENSE;**

**(4) DIRECT COPYRIGHT INFRINGEMENT – REPRODUCTION, DISTRIBUTION, DISPLAY, AND/OR CREATION OF DERIVATIVE WORKS;**

**(5) VIOLATION OF DMCA – REMOVAL OF CMI 17 U.S.C. § 1202(b)(1)**

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

Plaintiff EVOX Productions LLC ("**Plaintiff**" or "**EVOX**") brings this complaint against Google LLC, a Delaware limited liability company ("**Google**") and DOES 1-10 (together with Google, "**Defendants**"), and alleges as follows:

## JURISDICTION AND VENUE

**Subject Matter Jurisdiction**

1. This Court has subject matter jurisdiction over the copyright claim pursuant to 17 U.S.C. Section 501, *et seq*., and 28 U.S.C. Sections 1331 and 1338(a).

**Personal Jurisdiction**

2. This Court may exercise personal jurisdiction over Google because Google is headquartered in Mountain View, California, which is located in Santa Clara County. Google maintains its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043, and conducts substantial business operations throughout the Northern District of California.

**Venue**

3. Venue for EVOX's copyright claim is proper in the District pursuant to 28 U.S.C. Section 1400(a) because, as alleged herein, Defendants are amenable to personal jurisdiction here.

## PARTIES

4. EVOX is a Delaware limited liability company with its principal place of business in Chino, California.

5. Google is a Limited Liability Company organized under the laws of Delaware.

6. The true names and capacities of Defendants named herein as DOES 1 through 10 are unknown to EVOX, who therefore sues them by fictitious names. EVOX will amend this Complaint to allege the true names and capacities when ascertained.

7. Upon information and belief, in performing the acts or omissions

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

described in this Complaint, Google and each of the DOE defendants were acting as the principal, representative, agent, employee or alter ego of each other, and were acting within the scope of such agency or employment to commit the acts alleged herein. Each defendant sued herein aided and abetted the other with the intent that each would be successful in their mutual endeavors. Each defendant contributed to EVOX's damages and the statutory violations alleged herein.

## NATURE OF THE ACTION

8. EVOX has been a pioneer in the industry of automobile photography for over 30 years. During that time, it has meticulously catalogued the highest quality still images, interactive images, and videos of several thousand vehicle makes and models. EVOX licenses these images to a variety of entities in the automobile industry.

9. Given the proprietary methods that EVOX uses to maintain the consistency of its images, each image is a valuable intellectual property asset. Indeed, each of its images can be individually licensed. Accordingly, EVOX protects each image in its library with copyright registration.

10. Beginning in or around the middle of July 2023, EVOX learned that Google reproduced, distributed, publicly displayed, and developed derivative works from, EVOX's copyrighted images in multiple ways without license or authorization.

11. For instance, EVOX discovered that although Google had licensed a portion of EVOX's image library, it had downloaded, reproduced, distributed, and displayed at least 3,522 images that it had elected not to license.

12. EVOX would also learn that this infringement only scratched the surface. During its subsequent investigation, EVOX discovered that Google had downloaded and therefore reproduced over 200,000 of EVOX's copyrighted images that Google had failed to license.

13. Next, EVOX learned that Google had used EVOX images outside the

scope of the license agreement, thereby encroaching upon the rights conferred to EVOX pursuant to the Copyright Act. Specifically, Google allowed users of its advertising platform to repurpose licensed content from EVOX images for their advertising campaigns. EVOX purposely withheld this use from the scope of its license with Google in order to preserve EVOX's right to license images to these third party advertisers.

14. EVOX also learned that Google researchers had downloaded and therefore reproduced over 16,000 of EVOX's copyrighted images that Google had not licensed. EVOX further learned that Google had harvested these images in order to train its image generation platform.

15. Finally, EVOX believes that the various image generation models that Google has developed with EVOX's copyrighted images constitute derivative works. Moreover, the vehicle images that these model produce include derivatives of EVOX's copyrighted images and reproductions thereof.

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

## SPECIFIC ALLEGATIONS

### EVOX Develops a Comprehensive Library of Standardized Images That Are Each Protected By A Unique Copyright Registration

16. Over 30 years ago, EVOX began developing a standardized library of high-quality digital images ("**Images**") for every vehicle commercially available. Each year, it adds Images of approximately 500 new vehicles – representing all newly released makes, models, and trims.

17. The process includes an intensive post-production review. EVOX's photography team has labored to create a comprehensive set of interior, exterior, and interactive Images for each of the vehicles in its library.

18. EVOX's library includes interactive Exterior Spins ("**Spins**") and Interior Panoramas ("**Panos**"). Spins are a series of Images that enable a viewer to rotate the Images on a computer screen to mimic the experience of walking around the exterior of the subject vehicle.

19. Panos are a series of Images that enable a viewer to mimic sitting in the driver's seat of the subject vehicle, and exploring the interior by looking up, down, and side to side.

20. Over the years, EVOX has refined its process to such a degree that its images are widely regarded as the highest-quality digital automotive images in the industry. EVOX Images are regularly licensed individually, and the license for each image can exceed $1,300.

21. Given their independent value, EVOX protects its intellectual property rights by securing Certificates of Copyright Registration from the Register of Copyrights for each Image.

22. Today, EVOX owns and controls the copyrights in over two million digital photographs under the United States Copyright laws, and has obtained Certificates of Copyright Registration from the Register of Copyrights for over one million of these works. Each copyright registration includes multiple photographs, each with their own title, for a specific vehicle.

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

**Each of EVOX's Copyrighted Images is the Product of a Unique Process that Requires Myriad Creative Decisions**

23. EVOX has dedicated a substantial amount of resources and artistic effort in order to create a library composed of individual Images that capture the essence of the subject (*e.g.*, multiple makes, models, trims, and colors of vehicles) in a manner that is distinct in the vehicle photography industry.

24. Photographing vehicles poses unique challenges that EVOX has solved through its creative decisions. Each Image is a distinct EVOX composition, reflecting multiple protected expressive choices.

25. For instance, when a vehicle is photographed the resulting image will also contain a reflection of the vehicle's surroundings due to its highly polished surface.

26. In addition, vehicles photographed outdoors necessarily capture

unwanted reflections and lighting that both distract and detract from the underlying photo. EVOX has addressed these issues by using a specially designed photography studio and advanced editing techniques.

27. EVOX's development of its Spin and Panos compounded these challenges. In each instance, EVOX had to match the subject, lighting, and other aspects of each Image such that moving through a sequence of Images accurately replicates a dynamic experience for the viewer.

28. In order to mitigate reflections and other issues, EVOX has traditionally shot its Images in a photography studio specifically designed and built for vehicle photography. The studio features a white-walled cyclorama—with curved walls and no visible edges—to create the illusion of an endless background. In front of the cyclorama sits a large, motorized turntable on which vehicles can be driven and precisely centered using a laser-based procedure.

29. The turntable has gray walls shaped to simulate the horizon line, allowing for soft gray reflections and brighter highlights above them on the vehicle's side panels, helping define the vehicle's shape in photos without any color contamination. However, in recent years EVOX photographers have photographed vehicles on location and the "studio" effect is further enhanced with photo-realistic, human-directed, computer-assisted editing techniques.

30. The Images reflect the product of numerous deliberate and carefully considered creative decisions made by EVOX's photographers and production team. These creative decisions include, among others:

a. The composition and framing of the vehicle, including the precise positioning and angle of the vehicle on the turntable;

b. The degree to which the vehicle's wheels are turned;

c. The selection of camera lens, focal length, and focus;

d. The distance of the vehicle from the camera;

e. The height of the camera relative to the vehicle at the top of the

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

vehicle's wheel wells;

f. The use, color, and position of overhead lighting;

g. The placement of the vehicle against the white cyclorama background;

h. The creation of soft-edge drop shadows underneath the vehicle;

i. The lack of any noticeable reflection on the windshield and side windows to allow the interior of the vehicle to stand out;

j. The position and brightness of the sheen on the vehicle's black rubber tires based on the positioning of the vehicle and the white cyclorama; and

k. The use of gray walls around the turntable that are shaped to simulate a horizon line to create soft gray reflections and brighter highlights on the vehicle's side panels to define its shape without adding color contamination.

31. The product of the combination, selection, and arrangement of these protectable expressive choices defines each and every Image that is immediately recognizable as distinctively EVOX's. It is therefore unsurprising that EVOX has become renowned for the quality of its Images and the breadth of its Image library.

32. This success has required a substantial investment. Over the life of its Image library, EVOX has invested over $54 million dollars into its development. Upon information and belief, the actual present market value of that investment based on current dollars would easily exceed that $54 million number by several multiples.

**<u>Use 1: Google Reproduces, Distributes, and Displays</u>**

**<u>3,522 EVOX Images Without License or Authorization</u>**

33. At issue in this action are four (4) distinct categories of use by Google of EVOX Images that have infringed EVOX's copyrights.

34. In January 2020, Google licensed EVOX's library of Images, Spins,

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

and Panos for vehicles in the model years 2017 to 2021 pursuant to a license agreement (the "**License Agreement**"). A true and correct copy of the License Agreement is attached as Exhibit A. Portions of this License Agreement have been redacted to preserve confidentiality.

35. In July 2020, Google amended the License Agreement to include all Images that would subsequently be added to EVOX's library for model years after 2021. A true and correct copy of the amendment ("**Amendment**") is attached as Exhibit B. Portions of this Amendment have been redacted to preserve confidentiality.

36. Notably, Google elected *not* to expand the scope of the License Agreement to include Spins and Panos added to EVOX's library after the 2021 model year.

37. Although Google did not expand the scope of its license for Spins and Panos, EVOX discovered in or around May 2025 that Google was nevertheless using EVOX Spins and Panos for vehicles in the model years 2022, 2023, and 2024.

38. In particular, EVOX learned that Google had harvested these EVOX Spins and Panos without authorization, and was displaying them on the "**Knowledge Panel**." The Knowledge Panel is an information box which Google displayed on the screen of a user's computer adjacent to results of the user's web search.

39. EVOX is informed and believes that the unlicensed Spins and Panos that appeared in the Knowledge Panel were not degraded or reduced in size from the originals that Google harvested from EVOX's servers.

40. Google stored the EVOX Spins and Panos that it used without license or authorization on its servers. Curiously, the filename path that Google used for these images contained a prefix that included the phrase "licensed image," even though the Images at issue were not licensed:

https://encrypted-tbn0.gstatic.com/licensed-image

41. In total, Google infringed EVOX's copyrights in 3,522 Images by reproducing, distributing, and displaying Spins and Panos for which it did not have license or authorization. A listing of the individual, copyrighted Images that constituted the Spins and Panos that Google used without license or authorization, along with their copyright registration numbers and where they were located on Google's servers, is attached as Exhibit C.

**Use 2: Google Downloads and Reproduces EVOX Images Without License or Authorization**

42. While it was investigating Google's unlicensed use of EVOX Spins and Panos from the model years 2022, 2023, and 2024, EVOX discovered that Google's infringement was much more extensive than previously believed.

43. Specifically, EVOX learned that Google had also downloaded and reproduced Spins from model years 2000 through 2016. In total, this represented 221,653 individual, copyrighted Images.

44. To be clear, Google's reproduction of these Images was not associated with Google's standard practice of "scraping" or "crawling" the web with automated programs in order to develop the functionality of its search engine feature.

45. EVOX controlled access to the server where the Images were located, so it was rendered inaccessible to the web crawlers or "bots" that search engines typically use to map websites.

46. Google did not have license or authorization to reproduce these Images. A listing of the individual, copyrighted Images (along with their copyright registration numbers) that constituted the Spins that Google downloaded and reproduced without license or authorization is attached as Exhibit D.

**Use 3: Google Allows Users to Repurpose EVOX Images In a Manner that Was Outside the Scope of Its License**

47. In addition to the foregoing infringing uses, Google also infringed EVOX's copyrights by using EVOX Images in association with its image generation

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

products. Google refers to one of these products as "Nano Banana Pro."

***Google Uses Licensed EVOX***

***Images to Develop Nano Banana Pro***

48. Nano Banana Pro is an image generation and editing tool. It allows users to create and edit images using written prompts. The image generators developed by Google and other companies have become renowned for their ability to generate high quality images that have, in many instances, replaced stock images such as those licensed by EVOX.

49. Although the precise methods that Google used to develop Nano Banana Pro are uniquely within the purview of Google, it is widely believed that the computer programs that make image generators like Nano Banana Pro function are "trained" to create images by ingesting, processing, and deconstructing millions of sample images.

50. The images themselves are reduced to a series of datapoints that the program uses to identify patterns and statistical relationships between elements of the sample image. This content from the images is thereby used to train the program that makes the image generator work.

51. In order for the image generator to be effective, however, the program upon which it is built must absorb more than content associated with the subject of a sample image (*e.g.*, the color, shape, and size of the vehicle reflected in the image). If capturing the aspects of the subject itself were sufficient, there would be no need to train the program with so many sample images. Indeed, many of these programs are trained with hundreds of millions – and in some cases, *billions* – of sample images.

52. The program must also capture content that is associated with the artistic expression that is inherent to the image, such as the unique manner in which the photographer or artist chose to depict the subject of the image. This would include capturing variables such as lighting, shading, angles, etc.

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

53. EVOX is informed and believes that the "training" of the program involves distilling the content from the sample images, including any artistic expression contained therein, into data that becomes part of the image generator itself.

54. Content from the images is therefore integrated into the program, and thereby becomes weights and parameters that the image generator can later use to generate new images.

55. Thus, the process by which the copyrighted images are ingested, preprocessed, encoded, transformed into numerical or other machine-readable representations, effectively makes the training images part of the image generator.

56. EVOX is informed and believes that Google's Nano Banana Pro was developed using this process.

57. During the term of the License Agreement, EVOX's records reflect that Google downloaded 1,040,934 of EVOX's copyrighted Images. EVOX's records further reflect that Google downloaded these 1,040,934 copyrighted images over 200 million times.

58. EVOX is informed and believes that Google used the EVOX copyrighted Images it harvested from this gargantuan amount of download activity to train and develop Nano Banana Pro, and further, that the data contained within those images (*i.e.*, the image content, including the many elements of artistic expression) has become part of its image generation platform.

***Google Integrates Nano Banana***
***Pro With Its Google Ads Product***

59. In late 2025, Google began integrating Nano Banana Pro with a product called "Google Ads." Google Ads, which was previously referred to as "AdWords," is a product offering from Google. It allows businesses to create and display ads on the search results page of the Google platform for a fee.

60. One advertisement published by Google promoted the integration of

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

Nano Banana Pro with Google Ads as follows: "Nano Banana Pro is now live in Google Ads Asset Studio! Create high-fidelity, on-brand visuals with our most advanced image generation model."

61. Users of Google Ads could therefore use Nano Banana Pro to generate images and other visual content that would be displayed with their advertisements.

62. Because advertisements purchased through Google Ads can be associated directly with the results of specific searches (*e.g.*, a car dealership can purchase the right to display ads to Google users who are conducting searches related to car loans), it is a valuable product offering.

63. Accordingly, EVOX is informed and believes that Google has generated a substantial amount of revenue from the integration of Nano Banana Pro with Google Ads.

***<u>Google's Use of EVOX Images to Develop the Value of Google Ads Was Outside the Scope of the License Agreement</u>***

64. EVOX is informed and believes that Google used Images it collected pursuant to the License Agreement to train Nano Banana Pro; however, the License Agreement contained very specific limitations on the scope of how the Images could be used in order to preserve EVOX's copyrights.

65. For instance, pursuant to Section 2.2(e), Google agreed that it would "not use Licensed Content in a [business-to-business ("B2B")] commercial offering that permits Users to repurpose Licensed Content for commercial purposes."

66. The provision contained a specific example. Google agreed that "Licensed Content will not be offered to AdWords customers as a creative asset." Thus, EVOX purposely restricted the use of its intellectual property in association with Google Ads, the successor of AdWords.

67. EVOX included these conditions to limit the scope of Google's license with the intent of preserving its rights as a copyright holder. Without these conditions, Google's customers would have been able to use EVOX Images without

securing their own licenses from EVOX.

68. The License Agreement prohibited Google from allowing the EVOX copyrighted Images – which necessarily included the data and statistical patterns that are inherent to the licensed images and constitute the artistic expression – to be repurposed by users of Google Ads.

69. Because the content from the EVOX copyrighted Images became part of Nano Banana Pro, users of Google Ads that utilized Nano Banana Pro to generate images of vehicles for their advertisements were necessarily repurposing the content that EVOX had licensed to Google.

70. Although EVOX does not yet have access to the records that would illustrate how many times EVOX's licensed content was repurposed for use with Google Ads, given the volume of automobile advertising on the Google Ads platform, EVOX is informed and believes that it may have occurred thousands upon thousands of times.

71. Google also used EVOX's copyrighted Images in a manner that was foreclosed by Section 2.1 of the License Agreement. That Section only permitted Google to "create derivative works based on" the content that EVOX licensed "[d]uring the License Term."

72. Although the License Agreement permitted Google to use some licensed content after the license term (Section 7 of the License Agreement's "Information Table"), this was only for content that was "incorporated into fixed media." Notable examples included screenshots containing EVOX Images, and "other media that it would not be reasonably practical to recall."

73. Because Nano Banana Pro was developed using EVOX content (*i.e.*, the protected expression inherent to EVOX's copyrighted Images), and continues to generate images based upon the weights and parameters derived from that content, it constitutes a derivative work.

74. Moreover, the images generated by Nano Banana Pro are also

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

derivative of the copyrighted EVOX images that were used to train and develop it, because they are based upon the weights and parameters derived from EVOX content.

75. Thus, the integration of Nano Banana Pro with Google Ads specifically infringed upon EVOX's exclusive right to prepare new works based upon the original images because it was done outside the license term.

76. Again, the data that would demonstrate how many of EVOX's copyrighted Images that Google infringed in this way is a closely held secret, and EVOX has no means of establishing it without discovery.

77. EVOX is nevertheless informed and believes that by developing Nano Banana Pro with EVOX Images and integrating Nano Banana Pro with Google Ads, Google exceeded the scope of the License Agreement in a manner that infringed EVOX's copyrights.

***<u>Google's Use of EVOX Images to Develop Nano Banana Pro Threatens EVOX's Licensing Business</u>***

78. By all accounts, the integration of Nano Banana Pro with Google Ads was incredibly successful. This success was directly related to the ability of Nano Banana Pro to obviate the need for users of the product to license EVOX Images.

79. Indeed, at least one Google Product Manager explained the value of integrating a capable image generator with an advertising platform. During a November 2025 video posted to YouTube by Sequoia Capital, Nicole Brichtova explained :

> It has to look like your product like 100% otherwise you can't put it in an ad. Um, so we knew there was demand for it. We knew the models had a gap. Um, and we felt like we had the right recipe both in terms of like the model architecture and the data to finally make it happen. I think what surprised us was with just how good it was.

https://sequoiacap.com/podcast/how-googles-nano-banana-achieved-breakthrough-character-consistency/

80. Google therefore understood that in order for Nano Banana Pro to be

effective with Google Ads, it had to generate images that were "like 100%" – that is, virtually identical – to the images that users would otherwise have to license.

81. Accordingly, Google used the content from EVOX Images to develop a product that had the ability to create images that were so substantially similar to the originals that the originals were rendered obsolete.

82. Sample images generated by Nano Banana Pro illustrate how vehicle images developed through the platform mimicked the artistic expression that make EVOX Images unique.

**Sample 1: 2021 Sportback Premium Plus**




**Sample 2: 2021 Ford Explorer**




CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

**Sample 3: Chevrolet Silverado**




83. In each of the foregoing examples, the original EVOX Image is on the left, and the images in the center and on the right were generated in Nano Banana Pro simply by inputting the vehicle model, color, and angle.

84. The images generated by Nano Banana Pro illustrate that the underlying program appropriated the most important components of EVOX Images, and it did so repeatedly. The very same prompt was used to create the images identified in each example as "Pick #1" and "Pick #2."

85. Thus, even though the advanced generative properties of Nano Banana Pro produced slightly different variations of the subject vehicle, they nevertheless contained artistic expression (*e.g.*, shading, lighting quality, etc.) that copied EVOX's licensed content.

86. The apparent intent of Google's integration of Nano Banana Pro with its Google Ads platform was to supplant the need for EVOX Images altogether. The irony – and injustice – is that Google used EVOX Images to do it.

87. Thus, Google used EVOX Images in a manner that was outside the scope of the License Agreement to render EVOX Images obsolete.

**<u>Use 4: Google Reproduces, Pirates, and Exploits Unlicensed EVOX Images to Develop The First Iterations of Its Image Generator</u>**

88. Image generation technology is rapidly developing, and Google is widely known to be at the forefront of that effort. The manner in which image

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

generation platforms are developed, recycled, and repurposed is opaque.

89. EVOX is informed and believes that this is, at least in part, a purposeful effort to avoid inquiry from the copyright owners whose livelihoods are threatened by this new technology.

***Google's Develops the Imagen 1 Image***
***Generation Platform With the LAION-400M Dataset***

90. Google's original image generation platform was called "**Imagen 1**." Google researchers explained the development of Imagen 1 in a 2022 research paper titled *Photorealistic Text-to-Image Diffusion Models with Deep Language Understanding* ("**Paper**").

91. In the Paper, the researchers acknowledged that they had trained the Imagen 1 program with "the publicly available LAION-400M dataset." LAION is a non-profit organization, and its name is an acronym that stands for "Large-scale Artificial Intelligence Open Network."

***The LAION-400M Dataset Links to***
***16,008 of EVOX's Copyrighted Images***

92. LAION claims that its principal goals are to provide datasets, code, and machine learning models. The datasets that LAION creates are used by third parties – such as Google – to develop image generation models and other artificial intelligence programs.

93. LAION describes the LAION-400M dataset that Google used to develop Imagen 1 as an "open dataset containing 400 million English image-text pairs."

94. In an apparent effort to avoid running afoul of copyright laws, however, LAION does not host or provide the images that constitute the dataset. Instead, LAION explains that "LAION datasets are simply indexes to the internet, i.e. lists of URLs to the original images together with the ALT texts found linked to those images."

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

95. LAION further explains:

> Any dataset containing images is not released by LAION, it must have been reconstructed with the provided tools by other people. We do not host and also do not provide links on our website to access such datasets. Please refer only to links we provide for official released data.

96. Beginning on July 16, 2023, EVOX was provided with facts that eventually led to the discovery that the LAION-400M model that Google used to develop Imagen 1 contained links to EVOX's copyrighted Images.

***Google Reproduces 16,008 of EVOX's Copyrighted Images Without License or Authorization***

97. In the course of its constant effort to police its copyrights, EVOX personnel regularly search the internet to identify unauthorized and unlicensed uses. When potential infringement is discovered, EVOX will often engage a third party vendor to determine whether the images are part of EVOX's library.

98. In July 2023, EVOX's vendor confirmed for the first time that LAION-2B model – a larger dataset that contains links to 2.3 billion images – contained links to EVOX's copyrighted images.

99. EVOX was immediately and understandably concerned that LAION's other datasets might also contain links to EVOX's copyrighted images. A subsequent investigation confirmed those fears by revealing that the LAION-400M dataset contained links to 16,008 of EVOX's copyrighted Images. A listing of the individual, copyrighted Images that were linked to the LAION-400M dataset, including the URL where they were located and their copyright registration number, is attached as Exhibit E.

100. Upon learning that links to its copyrighted Images had been swept up in the LAION-400M dataset, EVOX began investigating who had used the LAION-400M dataset. As a result of these efforts, EVOX discovered that Google had admitted that it used the dataset to develop Imagen 1.

101. Imagen 1 was not trained on links alone. In order for the LAION-

400M dataset to add value to the development of Imagen 1, EVOX is informed and believes that Google reproduced the images stored on the media associated with those links.

102. Thus, Google must have reproduced 16,008 of EVOX's copyrighted Images without license or authorization. Indeed, as LAION instructs: "Any researcher using the datasets must reconstruct the images data by downloading the subset they are interested in."

103. The discovery of Google's use of EVOX's copyrighted Images to develop Imagen 1 was therefore part of an iterative process. EVOX first learned that the LAION-2B dataset provided links to EVOX Images. EVOX then discovered that the LAION-400M dataset also provided links to EVOX Images.

104. It was only after these initial discoveries that EVOX was able to derive that Google had reproduced EVOX's copyrighted Images in order to develop Imagen 1. Were it not for EVOX's constant and ongoing investigation of potential infringement, Google's infringement might remain concealed to this day.

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

***<u>The Facts Reflect that Google</u>***

***<u>Willfully Infringed EVOX's Copyrights</u>***

105. It appears that Google was aware that it was infringing the copyrights of EVOX and others who owned images referenced in the LAION datasets, but proceeded without concern for those copyrights.

106. First, as set forth herein LAION explains to those who use its datasets that it avoids copyright claims by providing *links* to the images – not the images themselves. EVOX is informed and believes that the personnel who developed Imagen 1 were aware of this.

107. Second, the Paper that explained the development of Imagen 1 expressly references concerns about the use of the dataset. For instance, the researchers recognized that an "ethical challenge relates to the large scale data requirements of text-to-image models, which have led researchers to rely heavily on

large, mostly uncurated, web-scraped datasets."

108. They further explained that "public and academic discourse regarding appropriate use of public data has raised concerns regarding data subject awareness ***and consent***." (Emphasis added).

109. Accordingly, even though Google was acutely aware of potential copyright concerns and consent, it nevertheless moved forward with the development of Imagen 1 without mitigating these challenges.

***Google's Actions Reflect a Conscious Disregard for Intellectual Property Rights That is Infecting the Technology Industry***

110. Unfortunately, Google's flagrant use of EVOX's Images without license or authorization reflects a broader disregard of intellectual property rights that is infecting the technology industry.

111. In some instances, it appears that some technology companies believe that their unlicensed and unauthorized use of copyrighted material constitutes fair use.

112. In other instances, however, it appears that technology companies simply believe that they have no obligation to respect the intellectual property rights of others.

113. In a talk he gave at Stanford University in 2024, former Google CEO Eric Schmidt was reported to say:

> So in the example that I gave of the TikTok competitor, and by the way, I was not arguing that you should illegally steal everybody's music. What you would do if you're a Silicon Valley entrepreneur, which hopefully all of you will be, is ***if it took off, then you'd hire a whole bunch of lawyers to go clean the mess up, right?*** But if nobody uses your product, it doesn't matter that you stole all the content . . .

https://fortune.com/2024/08/15/ex-google-ceo-eric-schmidt-stanford-ai-advice-steal-ip-hire-lawyers/

114. The import of Schmidt's comment was clear. The more that companies

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

can profit from their infringement of intellectual property rights, the greater the chance they will be able to insulate themselves from potential liability. In essence, they will be able to get away with it by hiring "a whole bunch of lawyers to go clean the mess up."

115. The attitude held by Schmidt and others should be chilling to those who make their living on the development and licensing of copyrighted material. The rapid development of technology like that described herein, when coupled with the ambitions of those who care little for the Copyright Act, represents an existential threat to their livelihood.

**COUNT ONE**

**(Direct Copyright Infringement of Unlicensed EVOX Images – Spins and Panos That Google Never Licensed – 17 U.S.C. § 501, *et seq.*)**

116. EVOX re-alleges the allegations in the preceding paragraphs as though fully set forth herein.

117. Each of the Images at issue in this action, whether individually or a component of a Spin or Pano, is an original pictorial work and constitutes copyrightable subject matter pursuant to 17 U.S.C. §§ 101 and 102.

118. Google was not, and is not, licensed or otherwise authorized to reproduce, distribute, publicly display, or make available the Images in the manner alleged herein.

119. *First*, Google infringed EVOX's copyrights in 3,522 Images by reproducing, distributing, and displaying Spins and Panos for which it did not have license or authorization.

120. *Second*, Google infringed EVOX's copyrights in 219,653 Images by reproducing Spins and Panos for which it did not have license or authorization.

121. The facts further demonstrate that Google acted willfully, because it recklessly disregarded EVOX's copyrights even though it was aware, or should have been aware, that its conduct constituted infringement.

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

122. EVOX has been damaged by Google's willful infringement in an amount to be determined.

**COUNT TWO**

**(Direct Copyright Infringement - Reproduction of EVOX Images via the LAION-400M Dataset to Develop Imagen 1 - 17 U.S.C. § 501, *et seq*.)**

123. EVOX re-alleges the allegations in the preceding paragraphs as though fully set forth herein.

124. Each of the 16,008 EVOX Images linked in the LAION-400M dataset is an original pictorial work and constitutes copyrightable subject matter pursuant to 17 U.S.C. §§ 101 and 102. EVOX owns valid Certificates of Copyright Registration from the Register of Copyrights for each of these Images.

125. The LAION-400M dataset does not contain images, nor does the organization that created the dataset host the images themselves. Rather, the LAION-400M dataset contains URLs that link to the locations where the images are stored in various locations accessible through the internet.

126. In order to use the LAION-400M dataset to train its Imagen 1 image generation platform, Google necessarily downloaded and reproduced the actual image files from the URLs contained in the dataset, thereby creating unauthorized copies of the 16,008 EVOX Copyrighted Images.

127. Google's reproduction of these 16,008 EVOX Copyrighted Images was not authorized under the License Agreement or any other license or agreement between EVOX and Google. Google obtained these Images through a third-party dataset compiled without EVOX's knowledge, consent, or authorization, and not through any channel established under the License Agreement.

128. Google's infringement was willful. As documented in its own research paper titled *Photorealistic Text-to-Image Diffusion Models with Deep Language Understanding*, Google's researchers expressly acknowledged ethical concerns regarding the use of web-scraped datasets, including concerns about "data subject

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

awareness and consent." Despite this documented awareness of copyright and consent issues, Google proceeded to reproduce EVOX's Copyrighted Images without obtaining license or authorization.

129. Google's unauthorized reproduction of the 16,008 EVOX Copyrighted Images to develop Imagen 1 constitutes direct copyright infringement in violation of 17 U.S.C. § 501, and is factually and legally distinct from Google's separate infringement arising from its use of licensed EVOX content in connection with Nano Banana Pro and Google Ads.

130. EVOX has been damaged by Google's willful infringement of the 16,008 Copyrighted Images in an amount to be determined.

## COUNT THREE

**(Copyright Infringement for Use Exceeding the Scope of the License - Development of Nano Banana Pro and Integration with Google Ads)**

131. EVOX re-alleges the allegations in the preceding paragraphs as though fully set forth herein.

132. Section 2.1 of the License Agreement granted Google a license to use EVOX's Licensed Content (*e.g.*, EVOX's copyrighted Images and the protected artistic expression contained therein) only during the License Term.

133. Section 2.2(e) of the License Agreement expressly limited the scope of the license by prohibiting Google from using Licensed Content in a business-to-business ("B2B") commercial offering that permits Users to repurpose Licensed Content for commercial purposes. As a specific example, the License Agreement provided that "Licensed Content will not be offered to AdWords customers as a creative asset."

134. The clear intent of the provision was to prevent Google from depriving EVOX of potential customers and licensees, which would occur if Google enabled its own customers to repurpose EVOX's copyrighted Images without licensing them from EVOX.

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

135. Google used Licensed Content, including the content and protected artistic expression inherent to EVOX's copyrighted Images, to develop and train Nano Banana Pro.

136. Google exceeded the scope of the license by integrating Nano Banana Pro with Google Ads (the successor to AdWords), thereby permitting advertisers to repurpose EVOX's Licensed Content as a creative asset in direct violation of Section 2.2(e).

137. Google also exceeded the scope of its license by continuing to exploit Licensed Content after the expiration of the License Term, outside the 120-day wind-down period and the fixed-media exceptions set forth in the License Agreement.

138. This exploitation included Google's continued distribution of Nano Banana Pro itself, which constitutes a work that is derivative of any copyrighted EVOX Images that were used to train it during the license term.

139. The vehicle images generated by Nano Banana Pro are also derivative of EVOX's copyright Images, in that they are based upon the Images that were used to train Nano Banana Pro.

140. Although the number of copyrighted EVOX Images that Google used to train and develop Nano Banana Pro is uniquely within the purview of Google, EVOX is informed and believes that Google used all of the Images that it collected during the license term to train Nano Banana Pro – along with others that Google never licensed.

141. As a direct and proximate result of Google's use of EVOX Images and Licensed Content outside the scope of its license, EVOX has been damaged in an amount to be proven at trial.

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

## COUNT FOUR

**(Direct Copyright Infringement – Violation of the Reproduction, Derivative Work, Distribution, and Public Display Rights 17 U.S.C. §§ 106, 501, *et seq.*;)**

142. EVOX owns the copyrights to each Image alleged and at issue herein.

143. As alleged herein, EVOX is informed and believes that Google has used EVOX's copyrighted Images to train its images generators, including the Imagen and Nano Banana series of image generation models.

144. Google was not authorized to reproduce, distribute, display, create derivative works from, or otherwise use EVOX's copyrighted Images that it did not license. Moreover, Google was not authorized to reproduce, distribute, display, create derivative works from, or otherwise use EVOX's copyrighted Images – that it had previously licensed – after the license term.

145. Google has infringed EVOX's exclusive rights under the Copyright Act by generating, displaying, and distributing images created by its image generation models that reproduce, or are unauthorized derivative works of, EVOX's copyrighted Images.

146. The images generated by Google's image generators include those that are substantially similar to EVOX's copyrighted Images because they mimic protectable elements of those works, and unauthorized derivative works thereof.

147. These generated images imitate the distinctive creative elements present in EVOX's copyrighted Images. These substantial similarities are reflected in the images generated for different vehicle models, including sedans, SUVs, trucks, coupes, and minivans across a range of manufacturers.

148. The vehicle images generated by Google's image generators also include unauthorized derivative works of EVOX's copyrighted Images because they imitate the distinctive creative techniques EVOX used to produce the copyrighted Images.

149. EVOX is informed and believes that Google's image generation models have reproduced, displayed, and distributed EVOX's copyrighted Images without authorization, and that they have created unauthorized derivative works of the copyrighted Images.

150. Google willfully infringed EVOX's copyrights, because EVOX is informed and believes that Google developed its image generation models with the express purpose of rendering licenses for EVOX's copyrighted Images obsolete.

151. EVOX has been damaged by the willful infringement of the Copyrighted Photographs in a sum to be determined.

## COUNT FIVE

**(Violation of the Digital Millennium Copyright Act 17 U.S.C. § 1202(b)(1))**

152. EVOX owns the copyrights to each Image alleged and at issue herein.

153. EVOX included the following Copyright Management Information ("CMI") for each Image:

a. EVOX's "©EVOX IMAGES" mark on the lower righthand corner of each Image; and/or

b. Metadata embedded into the Image containing the title, copyright ownership and other technical specifications of the Image.

154. EVOX is informed and believes that Google's development of its image generators with EVOX Images that it had not licensed first required that Google download the images, thereby creating an unauthorized reproduction of the unlicensed Image. Next, copies of the Images were distributed and displayed to the program that was used to develop the image generator.

155. EVOX is informed and believes that each of the unlicensed Images that was improperly downloaded contained the CMI that EVOX used to protect its copyrights.

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

156. EVOX is informed and believes that in order to maximize the benefit of using EVOX's copyrighted Images to train Google's image generators, Google first had to remove or alter the CMI so that the program did not confuse the CMI – such as the "©EVOX IMAGES" mark – as a component of the Image.

157. Google's unauthorized removal of CMI from EVOX's copyrighted Images during the training phase is reflected by the outputs. For instance, the sample images generated by Nano Banana Pro documented herein do not contain any CMI from EVOX or any other copyright holder, even though they clearly replicate the protected artistic expression of the Image itself.

158. Google was not authorized to remove or alter the CMI from EVOX's copyrighted Images. Moreover, EVOX is informed and believes that Google's removal of CMI from the Images was intentional because Google representatives knew that it increased the value of EVOX's copyrighted Images during the training process.

159. Moreover, Google either knew or had reasonable grounds to know that the removal of CMI from EVOX's copyrighted Images would induce, enable, facilitate, or conceal infringement.

160. For instance, Google knew that the images generated by the Imagen and Nano Banana models would be replicas, or near-replicas, of EVOX's copyrighted Images because it used these Images for training.

161. Google further knew that these images generated by the Imagen and Nano Banana models would no longer contain EVOX's CMI. Indeed, EVOX is informed and believes that Google was aware that its customers would value images generated by its image generators because they no longer contained CMI, such as the "©EVOX IMAGES" mark.

162. Accordingly, by training the programs upon which its images generators were developed with unlicensed EVOX Images stripped of CMI, Google induced, enabled, and facilitated the reproduction of EVOX Images, or derivatives

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

of EVOX Images.

163. Finally, Google should have known that its removal of CMI from EVOX's copyrighted images would conceal its infringement from others. Because the images generated by Google's image generators no longer contained EVOX's CMI, users of the image generators would have no way to know that Google had infringed EVOX's copyrights.

164. EVOX has been injured by Google's removal or alteration of EVOX's CMI in an amount to be determined.

## PRAYER FOR RELIEF

WHEREAS, EVOX prays for relief as follows:

1. For maximum statutory damage with respect to each copyrighted work infringed, or such other amounts as may be proper pursuant to 17 U.S.C. § 504(c). Alternatively, EVOX, at its election, is entitled to damages and/or wrongful profits pursuant to 17 U.S.C. § 504(b) for each separate infringement.

2. For maximum statutory damage with respect to each copyrighted work infringed, or such other amounts as may be proper pursuant to 17 U.S.C. § 1203. Alternatively, EVOX, at its election, is entitled to damages and/or wrongful profits pursuant to 17 U.S.C. § 1203 for each separate infringement.

3. For pre-judgment and post-judgment interest.

4. For EVOX's costs in this action, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505 and § 1203.

5. For such other and further relief as is just and proper.

DATE: October 23, 2026

**CALLAHAN & BLAINE, PC**

By: ______________________________
Michael Sachs
Jason Casero
Attorneys for Plaintiff EVOX PRODUCTIONS LLCAttorneys for Plaintiff EVOX PRODUCTIONS LLC

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445

## DEMAND FOR JURY TRIAL

In accordance with Federal Rule of Civil Procedure 38(b), Plaintiff EVOX demands a trial by jury on all issues triable by jury.

DATE: October 23, 2026

**CALLAHAN & BLAINE, PC**

By: 

Michael J. Sachs
Jason Casero
Attorneys for Plaintiff EVOX PRODUCTIONS LLCAttorneys for Plaintiff EVOX PRODUCTIONS LLC

CALLAHAN & BLAINE, PC
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
19900 MACARTHUR BLVD., SUITE 1200
IRVINE, CALIFORNIA 92612
TELEPHONE: (714) 241-4444
FAX: (714) 241-4445